# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:12CR177 |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE DONALD C. NUGENT |
| vs. | : | |
| | : | |
| JEFFREY REICHERT, | : | **REPLY TO GOVERNMENT'S** |
| | : | **RESPONSE TO MOTION IN LIMINE** |
| Defendant. | : | |
| | : | |

Now comes Defendant, Jeffrey Reichert, by and through counsel, and respectfully submits the following Reply to the government's Response to Motion in Limine.

                                                       Respectfully submitted,

                                                       */s/Darin Thompson*
                                                       DARIN THOMPSON (#0067093)
                                                       Assistant Federal Public Defender
                                                     JEFFREY B. LAZARUS (#0079525)
                                                     Attorney at Law
                                                     1660 West Second Street, Suite 750
                                                     Cleveland, Ohio 44113
                                                     (216) 522-4856 Fax: (216) 522-4321

                                                     Attorneys for Jeffrey Reichert

**MEMORANDUM**

**I.     If the government no longer intends to offer expert testimony regarding what constitutes infringement, then the Motion in Limine is withdrawn**

The Reply contradicts the government's emails to undersigned counsel regarding the proposed testimony of their experts. On January 8, 2013, the government indicated as follows:

> We are not going to have our experts testify to what the law is, but we are going to ask them about copyright protections on the gaming consoles and <u>whether, in their expert opinion, there is any non-infringing use for mod chips/modded gaming systems</u> or reason to traffic in mod chips or modified systems.

(emphasis added). On January 9, 2013, the government indicated as follows:

> However, <u>we certainly were planning on asking them</u> what a mod chip does, <u>how it infringes on the copyright in a Wii,</u> and whether, based on their training and experience, they are aware of any other uses for mod-chips is not a legal question, it is a factual one.

(emphasis added). The government now characterizes their proposed testimony as follows:

> [The Motion in Limine] seems to argue that any testimony by [the expert] concerning their opinion as to what constitutes copyright infringement should be excluded. However, the United States has no intention of asking [the experts] this question.

Response, Dkt. 33, at 4.

If the government now intends to limit the testimony of their experts to what is actually contained in their expert report (i.e., the technological protection measures on a gaming console, how a mod chip circumvents them, what modifications were done to the Wii in this case), then the defense Motion in Limine is withdrawn. However, if the government intends to offer expert testimony that the other uses for a modded console described in the defense Motion in Limine constitute copyright infringement, then the Motion in Limine is still necessary.

II. **Evidence of lawful other uses of modded consoles is relevant to Mr. Reichert's mens rea, specifically to whether he knew his conduct was unlawful and intended to do something the law forbids**.

Although there are important differences to be resolved, both the defense and government proposed jury instructions agree that Mr. Reichert must be shown to have known that his conduct was unlawful and to have acted with the purpose to disobey the law. Compare Dkt. 28, 29. The lawful other uses that Mr. Reichert was aware of, including those set forth in the defense Motion in Limine, are directly relevant to the issue of whether Mr. Reichert thought his conduct was lawful and whether he aced with purpose to disobey the law. An individual who was aware that a modded console could be lawfully used to play back-ups, out of region games, and homebrew, is more likely to believe that modded consoles are not prohibited by law.

The government cites the decision of the district court in Crippen to exclude evidence of "fair use" for the proposition that "what Mr. Reichert's customers did with the mod chips or modified gaming consoles after he sold them is irrelevant to the question of his criminal liability under the DMCA." Dkt. 33 at 3. This dramatically overstates the district court's decision. As the district court noted in a hearing one week after that decision was issued that "fair use" (meaning other lawful uses for a modded console) "could come up in a good faith belief. I haven't ruled on that instruction yet. Don't know whether I'm going to give it. But fair use as a straight [defense] -- I've already ruled on that. But I could see it coming it up when we're talking about mens rea . . ." United States v. Crippen, 2:09-CR-703, Dkt. 145, p. 20 (attached as Exhibit A).

The Supreme Court's holding in Cheek v. United States, 498 U.S. 192 (1991) supports Mr. Reichert's ability to present evidence of other non-infringing use for a modded console in support of his defense. In Cheek, the Court held the district court erred in instructing the jury to disregard

3

objectively unreasonable legal advice the defendant had received that wages and salaries were not taxed as income. Id. at 196-97, 203-04. The court held that "forbidding the jury to consider evidence that might negate willfulness would raise a serious question under the Sixth Amendment's jury trial provision." Id. at 203. Similarly, restraining Mr. Reichert from offering into evidence part of the basis of his belief that his conduct was not unlawful would deprive him of his right to put forward a defense.

As such, any evidence that may be relevant to Mr. Reichert's belief that his actions were legal should be presented to the jury as evidence regarding his mens rea. This must include any legal or non-infringing uses of mod chips of which he was aware. A person who is aware of numerous non-infringing uses for a modded console is more likely to believe that modded consoles are legal products.

**III.   There are multiple lawful other uses for a modded console**

The Reply characterizes the defense explanation of the many uses for a modded game console as "bald" and "assertions unsupported by any citations, authority, or expert conclusions." Response, Dkt. 33, at 2 fn. 1. The government does not actually claim that the explanation of other uses is incorrect, because government counsel is well aware that a modded game console does all of the things listed in the defense Motion in Limine, and more. Even an cursory investigation into the subject reveals that is an indisputable fact that modded game consoles can do everything listed in the Motion in Limine, and more.

Its worth noting that this is not the first time in which the government has attempted to claim there are no lawful other uses for a modded console. In the Crippen case, the government made the

same argument that "the only sole purpose of the modification" was to play pirated games, to which the Judge responded, "No, it's not. It is not. How about backup games? How about home brew?", United States v. Crippen, Tr. of Jury Trial, Day 2 at 19 (C.D. Cal. No. CR09-703)(attached as Exhibit A).

The other uses for modded consoles set forth in the defense have been extensively discussed in law review articles. One article set forth the uses as follows:

> Video game modification chips, or mod chips, are enhancement devices which users place inside video game consoles to add functionality to the machines. These small devices are typically used to either rewrite or bypass the hardware code on video game systems allowing the owner to run programs not provided by the manufacturer. The user completes installation by adding a mod chip to the motherboard of the console by soldering wires or using alternate connections within the console. Potential changes to the hardware code include enabling the system to perform additional functions, including functioning as "media players, file managers, and [FTP] servers." Homebrew is the term coined by computer hackers and other tinkerers for the software designed and created by consumers to add additional functions to the console, beyond those which are inherent, to their video game systems. Without mod chips, homebrew applications would not be viable for video game hardware systems.
>   Mod chips can serve both legal and illegal purposes. One potentially legal use of mod chips is defeating the "region encoding" of video game systems. Region encoding allows video game systems to "prohibit the use of games legally purchased in other countries." Mod chips also serve the legal function of remedying failures of video game manufactures to enhance system functionality, such as Nintendo's failure to equip DVD playback on the Nintendo Wii. Mod chips are frequently utilized for the legal purposes of enabling the use of different and varied operating systems, media applications, and other homebrew.

Phillip A. Harris, Jr., Mod Chip Use After Sony v. Divineo, N.C.J. L. & Tech. 115-17 (2007). Multiple authors have actually used the mod chips ability to unlock these other uses as essential to the definition of "mod chips":

> "Mod chips" are after-market accessories that modify Sony Playstation consoles to allow games legitimately purchased in one part of the world to be played on a Playstation console from another geographic region.

Derek J. Schaffner, The Digital Millennium Copyright Act: Overextension of Copyright Protection and the Unintended Chilling Effects on Fair Use, Free Speech, and Innovation, 14 Cornell J.L. & Pub. Pol'y 145, 163 (2005). See also Vijay G. Brijbasi, Game Console Modification Chips: The Effect of Fair Use and the Digital Millennium Copyright Act on the Circumvention of Game Console Security Measures, 28 Nova L. Rev. 411, 426 (2004)(defining mod chips as devices that allow additional software to run on a video game system, and homebrew as "hobbyist developed" software).

Numerous books have also set forth the non-infringing uses for a modded console. One author described the potential uses for a modded console as follows:

> Installing a mod chip allows installation of the Xbox-Linux operating system, which allows the Xbox to run a variety of application software, from free open-source video games to word processing applications to clustering software for building Beowolf-style computer clusters.

Andrew "bunnie" Huang, Hacking the Xbox: An introduction to Reverse Engineering 161-62 (2003).

Another author described the potential for a modded Xbox as follows:

> With a mod chip, you will be able to install a larger hard drive and install custom software. . . the Xenium OS, which allows you to run custom software on the Xbox. Because the Xbox is so well equipped, it would make a perfect media center for your living room, able to play music and home movies just for starters.

Jonathan Harbour, The Black Art of Xbox Mods 16(2005) The author further noted that "[t]he most common reason for installing a mod chip is to make it possible to boot up CDs or DVDs that are encoded for other regions." Id. at 69. A third author noted that "[w]ith the modchip [sic] installed in your Xbox, you will add different capabilities, such as alternate graphic interfaces or even alternate operating systems such as Linux." Joe Grand, Game Console Hacking 131 (2004).

If the government believes that these other uses for modded consoles constitute copyright infringement, the government should propose jury instructions to that effect to this Court, rather than attempt to have their witnesses "instruct the jury as to applicable principles of law []." See United States v. Zipkin, 729 F.2d 384, 387 (6th Cir. 1984).

        Respectfully submitted,

        */s/Darin Thompson*
        DARIN THOMPSON (#0067093)
        Assistant Federal Public Defender
        JEFFREY B. LAZARUS (#0079525)
        Attorney at Law
        1660 West Second Street, Suite 750
        Cleveland, Ohio 44113
        (216) 522-4856 Fax: (216) 522-4321

        Attorneys for Jeffrey Reichert

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2013, a copy of the foregoing Reply was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

        */s/Darin Thompson*
        DARIN THOMPSON (#0067093)
        Assistant Federal Public Defender