UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:12CR177 |
| | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | UNITED STATES' MOTION IN |
| | ) | LIMINE TO EXCLUDE EVIDENCE |
| JEFFREY J. REICHERT, | ) | OF "FAIR USE" AND REFERENCE |
| | ) | TO "LEGAL" USES FOR MOD CHIPS |
| Defendants. | ) | UNDER FEDERAL RULES OF |
| | ) | EVIDENCE 401, 402, 403, AND 702 |

Now comes the United States of America, by and through its counsel, Steven M. Dettelbach, United States Attorney for the Northern District of Ohio, and Chelsea S. Rice and Robert W. Kern, Assistant U.S. Attorneys, and hereby respectfully moves the court in limine for an order to exclude irrelevant evidence of "fair use" at trial, including evidence or argument regarding purported legal uses of back up video games, archival video games, mod chips or modified gaming consoles, pursuant to Federal Rules of Evidence 401, 402, 403, and 702.

I.      **Procedural History**

On April 3, 2012, Defendant Jeffrey J. Reichert ("Reichert") was charged in a one-count indictment with violating the Digital Millennium Copyright Act ("DMCA"), in violation of Title 17, United States Code, Sections 1201(a)(1)(A) and 1204(a). The indictment alleges that between June 15, 2007 and August 1, 2007, Reichert knowingly and willfully imported, offered to the public, or trafficked in technology products or devices which were primarily designed to circumvent the technological measures designed to effective control access to a work copyrighted under federal law, for the purposes of commercial advantage or private financial gain. (R. 1: Indictment). Specifically, the United States alleges that Reichert trafficked in modified gaming consoles and modification chips ("mod chips"). Mod chips are small electronic devices used to circumvent the security technologies built into video game hardware. These security technologies were added by the gaming manufacturers, such as Nintendo, to protect the copyrighted content within the game console and to ensure that only legitimately produced and distributed video games are operable in the game console. Reichert is alleged to have trafficked in mod chips as well as game consoles that he had already modified by installing a mod chip.

The United States provided Reichert with discovery on April 30, 2012, as well as a request for reciprocal discovery. Included in this discovery production was the United States' expert disclosure of Dylan Rhoads and Jason Allen, both of Nintendo, Inc., and their expert report (the same report attached to Defendant's motion as "Attachment A"), as well as a summary of Mr. Rhoads credentials and experience. (R. 12: Discovery Response). The United States supplemented this production on December 17, 2012, as soon as it received Mr. Allen's

3

updated resume.

Trial in this matter was initially scheduled for June 4, 2012. However, Reichert sought, and was granted, multiple continuances of the trial date. One of Reichert's stated reasons for these continuances was to obtain an expert in modification of gaming consoles. (R. 25: Motion for Continuance). The United States did not oppose any of Reichert's requests for a continuance. On December 5, 2012, this Court issued a trial order scheduling trial in this matter for January 14, 2013. At the final pretrial on January 7, 2013, counsel for Reichert indicated that he had been unable to obtain an expert, but was prepared to proceed with the trial on January 14. On January 9, 2013, five days before trial is scheduled to begin in this matter, Reichert filed a motion to exclude inadmissible expert opinion or, in the alternative, for a continuance. On that same date, the government filed it's response and on January 10, 2013, Reichert filed a reply.

Reicehrt's January 10, 2013 filing was the first time he has provided any citations or references in support for his claim that there are "legal" uses for Mod Chips. This filing on the eve of trial is Reichert's attempt to back door expert testimony through the use of portions of law review articles and other publications, rather than through a live witness who can be subject to cross examination. Despite this Court grating Reichert numerous continuances of his trial so that he could obtain an expert, it is only now - three days before trial - that Reichert has disclosed to the Government any citations to his claimed "legal" uses of mod chips or any purported authority to support such a proposition. Such evidence is only properly admissible through a qualified expert who is subject to cross examination on the witness stand. However, Reichert has failed to provide notice of any such witness and, in fact, as of January 7, 2013, told the United States that he could not obtain such an expert.

4

## II. Evidence of "Fair Use" with Respect to Reichert's Circumvention of the Nintendo Consoles Is Irrelevant and Should Be Excluded at Trial

Despite Reichert's insistence on relying on a "fair use" defense, Reichert fails to cite a single case that supports his contention that "fair use" is a legitimate defense to circumvention. Reichert cites numerous references to law review articles and books, documents that are just opinions and not subject to cross-examination. Even after making his laundry list of references, he admittedly is still unable to produce a qualified expert to testify at trial. The Government provided the defense with their list of experts in April of 2012, shortly after indictment. The motions deadline in this case was January 2, 2013. Therefore, at trial Reichert should not be permitted to make arguments regarding unsupported and untested references to fair use or purported legal uses of mod chips.

The reason for defendant's failure to produce a single case is simple; the weight of authority is clear that "fair use" can never be an affirmative defense to the act of circumvention. See e.g., Realnetworks, Inc. v. DVD Copy Control Ass'n, 641 F.Supp.2d 913, 942 (N.D. Cal. 2009)("[F]air use can never be an affirmative defense to the act of gaining unauthorized access. . . ."); Sony Computer Entertainment America, Inc. v. Divineo, 457 F.Supp.2d 957, 965 (N.D. Cal. 2006) ("[D]ownstream customers' lawful or fair use of circumvention devices does not relieve [defendant] from liability for trafficking in such devices under the DMCA."); 321 Studios v. Metro Goldwyn Mayer Studios, Inc., 307 F.Supp.2d 1085, 1097 (N.D. Cal. 2004) ("[T]he downstream uses of the software by the customers of 321, whether legal or illegal, are not relevant to determining whether 321 itself is violation the [DMCA]."); see also Chamberlain Group, Inc. v. Skylink Technologies, Inc., 381 F.3d 1178, 1195 (Fed. Cir. 2004) (defendants

5

who use devices that circumvent access controls may be subject to liability under Section 1201(a)(1), whether they infringe or not); Universal City Studios, Inc. v. Corley, 273 F.3d 429, 443 (2d Cir. 2001) ("[T]he DMCA targets the circumvention of digital walls guarding copyrighted material (and trafficking in circumvention tools), but does not concern itself with the use of those materials after circumvention has occurred."); Universal City Studios, Inc. v. Reimerdes, 111 F.Supp.2d 294, 322 (S.D.N.Y. 2000)("[T]he decision not to make fair use a defense to a claim under Section 1201(a) was quite deliberate.").

Realnetworks involved an encryption system that was embedded into DVDs to prevent the unlawful copying of movies. 641 F.Supp.2d at 918.  Plaintiff Realnetworks filed suit against several motion picture studios for declaratory relief, based on the argument that its RealDVD product, which allowed users to create and save personal copies of DVDs onto a laptop computer or computer hard drive, did not violate the DMCA. Id. at 926.  Notably, Realnetworks argued that its product was marketed exclusively for use with DVDs that a consumer owns and only to those users who sought to make backup copies of legally-owned DVDs. Id.  The motion picture studios, in turn, brought an action against Realnetworks seeking to enjoin use of the RealDVD product based on its violation of the DMCA. Id. The court concluded that Realnetworks' RealDVD product violated the access-control provision of the DMCA.  Id. at 933. In so holding, the court considered the same defense that defendant attempts to raise in this case. Notably, Realnetworks attempted to argue that Section 1201(c)(1), which provides that "[n]othing in this section shall affect the rights, remedies, limitations, or defense to copyright infringement, including fair use" constitutes an affirmative defense to copyright infringement.  Id. at 941. The

6

court rejected that argument and noted that fair use is prohibited with respect to circumvention under section 1201(a). Id. at 942. The court went on further to note that "fair use can never be an affirmative defense to the act of gaining unauthorized access." Id. The court also noted that Realnetworks' persistence in arguing that Section 1201(c) creates an affirmative defense to circumvention is "futile," given that "[t]here is no ground in law for [plaintiff] to assert a 'fair use' defense based on RealDVD being capable of substantial noninfringing use." Id.

The Second Circuit in Corley also considered the applicability of a "fair use" defense in the context of circumvention and concluded that the defense does not apply to the act of circumvention. In Corley, plaintiffs, a group of eight motion picture studios, sought injunctive relief against defendant Corley, who, together with his company, created and made available on the Internet a decryption program that circumvented the CSS technology contained on DVDs. Corley, 273 F.3d at 434-435. The district court granted plaintiffs' request for an injunction and concluded that defendant violated the DMCA by creating and making the technology available on the Internet. Id. at 434-435. On appeal, defendant argued that Section 1201(c)(1) permits the circumvention of encryption technology protecting copyrighted material when the material will be put to "fair uses" which are exempt from copyright liability. Id. at 443. The Court rejected defendant's argument: "We disagree that subsection 1201(c)(1) permits such a reading. Instead, it simply clarifies that the DMCA targets the circumvention of digital walls guarding copyrighted material (and trafficking in circumvention tools), but does not concern itself with the use of those materials after circumvention has occurred." Id. Thus, as Corley makes clear, a downstream user's legitimate use of a device that has been modified to circumvent the device's access controls is irrelevant to the act of circumvention itself. This reading of the

7

non-applicability of a "fair use" defense in the circumvention context is in accord with the numerous cases following Corley. See e.g., Sony Computer Entertainment America, Inc. v. Divineo, 457 F.Supp.2d 957, 965 (N.D. Cal. 2006)("[D]ownstream customers' lawful or fair use of circumvention devices does not relieve [defendant] from liability for trafficking in such devices under the DMCA."); 321 Studios v.Metro Goldwyn Mayer Studios, Inc., 307 F.Supp.2d 1085, 1097 (N.D. Cal. 2004) ("[T]he downstream uses of the software by the customers of 321, whether legal or illegal, are not relevant to determining whether 321 itself is violation the [DMCA]."); see also Chamberlain Group, Inc. v. Skylink Technologies, Inc., 381 F.3d 1178, 1195 (Fed. Cir. 2004) (defendants who use devices that circumvent access controls may be subject to liability under Section 1201(a)(1), whether they infringe or not).

Because "fair use" is not a defense to the act of circumvention, it is irrelevant to the issue of whether Reichert circumvented the technological measure designed to protect a copyright and Reichert is not permitted to introduce evidence or argument at trial that would support that defense. See Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible."). The Court should therefore exclude any evidence that Reichert may seek to introduce at trial to support that defense, including his contention that the modifications he performed on the Nintendo Wii consoles were targeted toward users who sought to create or play "homebrew" games or play backup copies.

In short, given that "fair use" is not a legitimate defense to the act of circumvention, the only conceivable purpose for which defendant would offer evidence of "fair use," including any evidence or argument regarding "homebrew" games or backup copies of video games would be to encourage jury nullification. Such evidence is plainly improper and should be excluded at

8

trial.  See United States v. Sepulveda, 15 F.3d 1161, 1190 (1st Cir.1993) ("A trial judge . . . may block defense attorneys' attempts to serenade a jury with the siren song of nullification"); United States v. Trujillo, 714 F.2d 102, 106 (11th Cir. 1983) ("[N]either the court nor counsel should encourage jurors to violate their oath [to follow the law]"); see also Zal v. Steppe, 968 F.2d 924, 930 (9th Cir. 1992) (Trott, J., concurring).

Because evidence of "fair use" is irrelevant and has no probative value to any issues in the case any evidence or argument offered by defendant to support that defense is unfairly prejudicial, misleading to the jury, and confuses the issues. Such evidence should therefore be excluded under Federal Rule of Evidence 403.

**III.	Conclusion**

For the foregoing reasons, the government respectfully requests that the court exclude any evidence that defendant may seek to introduce at trial regarding a "fair use" defense, as well as any references during trial to "legal" uses of Mod Chips. Fair use can never be an affirmative defense to the act of gaining unauthorized access and is therefore irrelevant in the Government's case against Mr. Reichert. Additionally, Reichert has failed to provide any notice or disclosure as to who he will be calling to testify regarding "legal" uses of mod chips. Therefore, any reference to these claimed legal uses for mod chips uses is based on unsupported and untested opinions that is not subject to cross examination and, therefore, should be excluded at trial.

>	Respectfully submitted,
>	STEVEN M. DETTELBACH
>	United States Attorney
>
>	By:	/s/ Chelsea S. Rice
>		Chelsea S. Rice (0076905)
>		Robert W. Kern (0005161)
>		Assistant U.S. Attorney
>		Suite 400, U.S. Courthouse
>		801 West Superior Avenue
>		Cleveland, Ohio 44113
>		Tel. (216) 622-3752/3836
>		Fax (216) 522-8355
>		E-Mail: Chelsea.Rice@usdoj.gov
>			Robert.Kern@usdoj.gov

10

CERTIFICATE OF SERVICE

The undersigned certifies that on January 11, 2013, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

                                              s/Chelsea S. Rice
                                              Chelsea S. Rice
                                              Assistant U.S. Attorney