IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:12CR177 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | UNITED STATES OF AMERICA'S |
| JEFFREY J. REICHERT, | ) | <u>SENTENCING MEMORANDUM</u> |
| | ) | |
| Defendant. | ) | |

Now comes the United States of America, by its counsel, Steven M. Dettelbach, United States Attorney, and Robert W. Kern and Chelsea S. Rice, Assistant United States Attorneys, and respectfully submits this memorandum setting forth the United States' position regarding the calculation of the applicable Sentencing Guidelines level, and the sentencing factors set forth in 18 U.S.C., Section 3553(a), relative to the imposition of sentence for the Defendant, Jeffrey J. Reichert.

The Presentence Investigation Report ("PSR") calculates Reichert's adjusted advisory Sentencing Guidelines level as Level 14, Criminal History Category I, with a

resulting advisory sentencing range of 15-21 months of imprisonment. The Government agrees with the computation of the offense level in the PSR and respectfully submits that 15-21 months is the appropriate sentencing range in this case.

For the reasons stated herein, the government respectfully submits that the Court should not depart or vary downward from the offense level set forth in the PSR or from the resulting sentencing range, and should impose a sentence within the advisory guidelines range of 15-21 months.

**I.      BACKGROUND**

The offense conduct is set forth in the Presentence Investigation Report at paragraphs 6 through 18.

As this Court is aware, a jury found Reichert guilty of violating the Digital Millennium Copyright Act. Because this Court presided over the jury trial in this case and is aware of the facts and circumstances of the offense, the government will not reiterate the detailed factual and procedural history of the case in this pleading; instead, the government provides the following summary of the offense conduct.

In 2007, an investigation was conducted by the Department of Homeland Security, Immigration and Customs Enforcement "ICE" (now know as Homeland Security Investigations or "HSI"), focusing on the sale and installation of modification chips (aka "mod chips") used to circumvent copyright protection measures designed into various video game systems such as the Nintendo Wii, the Sony Playstation and the Microsoft X-

Box.  Through this investigation, various Internet websites were identified which advertised to the public the sale or mod chips or other circumvention devices, as well as installation services for such devices.  Mod chips illegally circumvent the technology protection features designed into the video game consoles and enable users to play unauthorized or counterfeit ("pirated") versions of video game programs.  The chips also circumvent the technology protection features which prevent the playing of "out of region" games.

One of the websites identified through this investigation and subsequently targeted by ICE was a website known as www.fallsinc.com, which was registered to Jeffrey Reichert of Northwood, Ohio.  During this time, Reichert was also a moderator on the x-box scene Internet forum and was known by the name "FallsInc" on the forum board.  As a moderator, Reichert oversaw and administered discussion forums which fell within his area of expertise, including discussion forums devoted to "hacking" video game consoles.  As a moderator, Reichert also established and enforced "rules of conduct" on the discussion forum, and advertised the sale and installation of modification chips via the x-box scene forum.

In April 2007, Reichert sold a "pre-modded" Nintendo Wii game console to an ICE agent acting in an undercover capacity.  The undercover agent requested Reichert to purchase a new Wii, install a modification chip in the Wii, and then sell it to him.  Reichert agreed and a sales price of $350 was negotiated for the transaction.

On August 1, 2007, a federal search warrant was executed at Reichert's address in Northwood, Ohio.  That residence turned out to be his grandmother's home, and Reichert was not present at the time of the search.  Instead, Reichert was staying at his girlfriend's home in Toledo, Ohio.  Several agents drove to the girlfriend's home and found Reichert asleep.  He later consented to an interview, gave consent to search that location and voluntarily turned over his computer to the agents.  During his interview, Reichert identified a third location in Milbury, Ohio, where he actually performed the mod chip installations and accompanied agents to that location.  The owner of the third location consented to a limited search of the detached garage for items belonging to Reichert.  Agents seized various electronic components and tools Reichert used to install mod chips into gaming consoles.  Agents also seized approximately 12 additional modifications chips.

The indictment forming the basis of this case was returned by the grand jury on April 3, 2012.  The trial of this matter occurred January 14-16, 2013 and the jury returned a guilty verdict on the sole count of the indictment on January 16, 2013.

## II.  APPLICABLE LEGAL STANDARDS

Any sentencing determination must begin with the calculation of a defendant's total offense level under the Sentencing Guidelines.  Although the Supreme Court has declared the Guidelines to be advisory, it has also stated that "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting

point and the initial benchmark." *Gall v. United States*, 128 S. Ct. 586, 596 (2007). The Sixth Circuit adheres to this view, holding that sentencing determinations should begin with a calculation of the appropriate Guidelines range. The Guidelines then serve as an element to be considered along with the other sentencing factors set forth in 18 U.S.C., Section 3553(a). *See United States v. Collington*, 461 F.3d 805, 807 (6th Cir. 2006).

The Sentencing Guidelines, therefore, remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses. While, to be sure, "[i]n accord with 18 U.S.C., Section 3553(a), the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence," *Kimbrough v. United States*, 128 S. Ct. 558, 574 (2007), it remains the case that "the Commission fills an important role: It has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Id.* at 574 (quoting *United States v. Pruitt*, 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)).

In addition to the Sentencing Guidelines, this Court must also consider all of the sentencing considerations set forth in 18 U.S.C., Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from

5

further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C., Section 3553(a).

### III. SENTENCING GUIDELINES COMPUTATION

In this case, the PSR correctly calculates the advisory Sentencing Guidelines range as follows:

| | | |
|---|---|---|
| Base Offense Level | 8 | (U.S.S.G. §2B5.3) |
| Offense involving Distribution of Circumvention Devices | +2 | (U.S.S.G. §2B5.3(b)(2)) |
| If resulting offense level is less than 12 Increase to 12 | 12 | |
| Use of special skill | +2 | (U.S.S.G §3B1.3) |
| **Total** | **14** | |

The Government further submits that the Defendant is not entitled to a reduction under Guidelines Section 3E1.1(a) for acceptance of responsibility in this case.

Based upon an adjusted offense level of 14, and a Criminal History Category I, Reichert's advisory Sentencing Guidelines range is 15-21 months of imprisonment. The government respectfully submits that the Court should impose a sentence of imprisonment within that range, and that based upon the facts and circumstances

presented in this case, that no downward variance or downward departure is warranted or appropriate in this case.

## IV. LOSS AMOUNT

As an initial matter, a district court is required to make a finding as to loss amount by a preponderance of the evidence using a reasonable estimate predicated upon the facts of the case. *United States v. Blackwell*, 459 F.3d 739, 772 (6th Cir. 2006)(citing *United States v. Davidson*, 409 F.3d 304, 310 (6th Cir. 2005)). In describing the above standard for ascertaining a loss amount, the Sixth Circuit noted that, "the district court's findings are not to be overturned unless they are clearly erroneous." *United States v. Triana*, 468 F.3d 308, 321 (6th Cir. 2006)(citing United States v. Guthrie, 144 F.3d 1006, 1011 (6rh Cir. 1998).

Here, the amount of the loss resulting from Defendant's conduct is nearly impossible to calculate. Due to his failure to maintain any business records, there is no way of determining exactly how many mod chips the defendant sold or installed. Furthermore, there is also no way of calculating the revenue lost by video game manufacturers as a result of the Defendant's conduct here. The installation of these mod chips enabled users to play counterfeit or "pirated" copies of video games thereby eliminating the need to purchase legitimate or authentic copies of the same games from video game sellers. The Court may recall, however, the testimony of Nintendo Software

Engineer Dylan Rhodes concerning the negative revenue impact this type of conduct has on developers and sellers of authentic video games.

**VI.  USE OF A SPECIAL SKILL TO FACILITATE THE OFFENSE**

The PSR correctly provides for a two-level sentencing adjustment, pursuant to U.S.S.G. § 3B1.3, for Reichert's use of a special skill in the commission of his offense. Sentencing Guidelines Manual Section 3B1.3 provides that "[I]f the defendant .... used a special skill in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels."  The commentary to this section states that a special skill "refers to a skill not possessed by members of the general public and usually requiring substantial education, training or licensing."  U.S.S.G. § 3B1.3, App. Note 4. However, formal training or education is not a requirement in order for a court to find that a defendant possesses a special skill.  Indeed, such a skill may be acquired through experience or self-teaching.  *See*, *e.g.*, *United States v. Godman*, 223 F.3d 320 (6th Cir. 2000); *United States v. Prochner*, 417 F.3d 54, 61-63 (1st Cir. 2005); and *United States v. Nelson-Rodriguez*, 319 F.3d 12, 58 (citing *United States v. Noah*, 130 F.3d 490, 500 (1st Cir. 1997)).  In fact, the guideline provision itself does not require any formalized training or licensing for the adjustment to apply.

Here, Reichert developed specialized skills in computers and modifying gaming consoles, which he then used to facilitate the commission of his offense.  Reichert knew what components and tools were required to modify a gaming console and personally obtained these parts, including the mod chips, wires, soldering iron, and, if necessary, a

8

new gaming console.  Reichert would used the specialized skills he had developed to dismantle the gaming console, attach the necessary wiring, and install the mod chip itself.  These actions - safely dismantling a gaming console and ensuring that the intricate parts and pieces are correctly wired and configured before rebuilding the console - are not skills that would be possessed by a member of the general public.  Nintendo Anti-Piracy specialist, Jason Allen, testified at trial that the video game consoles were designed to be opened only by engineers and technicians using specially designed tools.  (Trial Transcript at 227).  With regards to the process of installing a modification chip into a Nintendo Wii or other video game system, Allen testified that "[i]t is a risk electrically, so in this case, you need to properly identify which wires go to which points, and it is a pretty complicated process."  (Trial Transcript at 227-28).  Allen further testified that "[i]f you've ever used a soldering gun and try and touch contact points, melt them down to allow a small wire to be connected, you hold the gun on too long, you can burn the chip, the board.  It is a risky thing to undertake, and so it is not recommended for someone who hasn't had experience doing that."  (Trial Transcript at 245-46).

     Reichert also used his specialized computer and technological skills to set-up and operate multiple websites, which he used to advertise his mod chip installation services.  He also used his websites to advertise and sell the mod chips and a variety of pre-modded gaming consoles, including PlayStations, Xboxes, and Nintendo Wiis.  Additionally, Reichert used his specialized skills in his role as moderator on the x-Box scene forum.  In

this venue, Reichert served as an "expert" on modifying game consoles and answered other users technological questions about mod chips and modified gaming systems. The e-mails sent to the Defendant and sent by the Defendant (Gov. Ex. 14) contain several examples of discussions concerning other individuals that had attempted to modify their video game consoles, had damaged the circuit boards due to their lack of expertise, and the Defendant indicating that he could "fix" or repair the problems, based upon his unique skills and talents in modifying and repairing the video game consoles. Clearly, members of the general public could not do this, and even somewhat knowledgeable members of the video gaming community were incapable of matching the Defendant's talents. In this area of computer skills, Reichert clearly has a special skill even without the formality of a degree or other certification.

Finally, contrary to Reichert's arguments in his objections to the PSR, "specialized skill" is not an element of Reichert's offense of conviction, nor is it is a specific offense characteristic. Reichert was convicted of *trafficking* in products or parts that were primarily designed to circumvent technological measures designed to control access to a copyrighted work. Specialized skill is not an element of the offense, and if Reichert had merely been selling the mod chips the specialized skill adjustment would not be appropriate. However, Reichert's actions went far beyond simply selling mod chips that he ordered from oversees. Instead, Reichert used his specialized skills to actually *install* the mod chips into gaming consoles. Installation is not an element of the offense, nor is

it a specific offense characteristic.  The four-level specific offense characteristic enhancement pursuant to U.S.S.G. § 2B5.3(b)(3)(B) is applied because Reichert was "trafficking in circumvention devices."  Therefore, the two level enhancement for use of a special skill, under U.S.S.G. §3B1.3 is appropriate and warranted in this case.

### VI. APPLICATION OF §3553(a) FACTORS

#### A. Nature and Circumstances of the Offense and History and Characteristics of the Defendant

Reichert's offense of conviction, violating the Digital Millennium Copyright Act of 1998, is admittedly a non-violent offense.  This categorization, however, is already taken into consideration by the advisory Sentencing Guidelines in calculating the base offense level found in U.S.S.G. Section 2B5.3.

#### B. Need for the Sentence Imposed to Reflect Seriousness of Offense, to Promote Respect for the Law and to Provide Just Punishment for the Offense

A sentence within the advisory guidelines range of 15-21 months of imprisonment would promote respect for the law in this case.  Reichert does not have a prior criminal history, a fact which is taken into consideration by the advisory Sentencing Guidelines in arriving at the sentencing range of 15-21 months.  The Court's attention is respectfully directed to Reichert's Myspace page which was introduced into evidence at trial.  It is on this website that Reichert boasted about his illegal activity and was depicted holding a large wad of cash with a caption that read "I make so much bread, people think I own a

bakery." This cavalier attitude towards his illegal activity further supports the need for a sentence of incarceration in this case.

Based upon all of the foregoing reasons, a guidelines sentence within the applicable range of 15-21months is appropriate and should be imposed by the Court.

**C.     The Need to Afford Adequate Deterrence and to Protect the Public from Further Crimes of the Defendant**

The government does not possess a crystal ball and as such there is no way to know whether Reichert is likely to engage in additional criminal conduct in the future. The fact that he flaunted his financial success from his illegal endeavors by displaying photos of himself on the Internet holding a large wad of cash, clearly indicates an awareness that his conduct was illegal and a deeper rooted disrespect for the law, and reinforces the need for a prison term in this case. The government submits that a guidelines sentence here would also provide a significant public deterrence to others considering engaging in this type of criminal conduct. As the Sixth Circuit has pointed out, "[b]ecause economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *United States v. Peppel*, ___F.3d___, 2013 WL561352, *7 (6th Cir. 2013) (citing *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006)  For all of these reasons, the government respectfully submits that the Court should sentence the defendant within the sentencing range of 15-21 months.

**VI.    CONCLUSION**

For the reasons set forth above, the United States respectfully requests that the Court not depart of vary downward from the advisory Sentencing Guidelines range as set forth in the Presentence Report, and impose a sentence within the advisory Sentencing Guidelines range of 15-21 months.

>Respectfully submitted,
>
>STEVEN M. DETTELBACH
>United States Attorney
>
>By:    /s/ Robert W. Kern
>       Robert W. Kern (0005161)
>       Assistant U.S. Attorney
>       Suite 400 U.S. Courthouse
>       801 West Superior Avenue
>       Cleveland, Ohio 44113
>       Tel. No. (216) 622-3836
>       Fax No. (216) 522-2403
>       E-Mail: Robert.kern@usdoj.gov
>
>By:    /s/ Chelsea S. Rice
>       Chelsea S. Rice (0076905)
>       Assistant U.S. Attorney
>       Suite 400 U.S. Courthouse
>       801 West Superior Avenue
>       Cleveland, Ohio 44113
>       Tel. No. (216) 622-3752
>       Fax No. (216) 522-2403
>       E-Mail: Chelsea.Rice@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on March 20th, 2013, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

/s/ Robert W. Kern
Robert W. Kern
Assistant U.S. Attorney